Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff Jesus Mendoza*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS MENDOZA, derivatively on behalf of HF FOODS GROUP INC., <br><br> Plaintiff, <br><br> v. <br><br> ZHOU MIN NI, XIAO MOU ZHANG, CAIXUAN XU, JIAN MING NI, ZHEHUI NI, HONG WANG, CHAN SIN WONG, and REN HUA ZHENG, <br><br> Defendants, <br><br> and <br><br> HF FOODS GROUP INC., <br><br> Nominal Defendant. | Case No. 2:20-cv-05300-ODW (JPRx) <br><br> **JESUS MENDOZA'S MEMORANDUM OF LAW IN OPPOSITION TO JIM BISHOP'S MOTION TO CONSOLIDATE AND FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL (DKT. NO. 20)** <br><br> Date: February 8, 2021 <br> Time: 1:30 p.m. <br> Courtroom: 5D (1st Street Courthouse) <br> Judge: Hon. Otis D. Wright II |

[*Additional caption continues on following page*]

| | |
|---|---|
| JIM BISHOP, Derivatively on Behalf of HF FOODS GROUP INC., | Case No. 2:20-cv-10657-ODW (JPRx) |
| Plaintiff, | |
| v. | |
| ZHOU MIN NI, XIAO MOU ZHANG, CAIXUAN XU, JIAN MING NI, ZHEHUI NI, HONG WANG, CHAN SIN WONG, and REN HUA ZHENG, | |
| Defendants, | |
| and | |
| HF FOODS GROUP INC., | |
| Nominal Defendant. | |

# **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ........................................................................1

   A. Background ..............................................................................................4

II.  ARGUMENT ................................................................................................5

  A. Bishop's Motion Should Be Denied Because He Lacks Standing and His Motion Violates the Stay ...............................................................................5

   i.  Bishop Lacks Standing ..........................................................................5

   ii. Bishop Cannot Lift the Stay of the Mendoza Action ...................................7

  B. Bishop's Motion Should be Denied Even if Bishop Has Standing and His Motion Did Not Violate the Stay ....................................................................9

   i.  Consolidation and Appointment of Lead Plaintiff and Counsel is Premature ....................................................................................................9

   ii. Bishop's 220 Demand Does Not Support Granting His Motion ...............11

   iii.That Mendoza Filed the First Action Weighs Against Bishop's Motion ...12

   iv. Mendoza and His Counsel Do Not Face Any Conflict in Their Participation in the Derivative Actions ...........................................................13

   v. Bishop's Counsel is Not More Qualified or Capable than Mendoza's Counsel .........................................................................................................15

   vi. Bishop Seeking the Appointment of Three Firms is Excessive and Unnecessary .................................................................................................17

III.  CONCLUSION............................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashworth v. Albers Med., Inc.*,
  229 F.R.D. 527 (S.D. W.Va. 2005) ........................................................6

*Bao v. Page*,
  No. 19-CV-00314-JSW, 2020 WL 1671556 (N.D. Cal. Feb. 5, 2020) ................9

*Biondi v. Scrushy*,
  820 A.2d 1148 (Del. Ch. 2003) ........................................................12

*Christine Asia Co Ltd. v. Alibaba Group Holding Ltd.*,
  No. 15-md-2631 (S.D.N.Y. Oct. 16, 2019) ........................................16

*Clair v. DeLuca*,
  232 F.R.D. 523 (W.D. Pa. 2006) ........................................................19

*Easton v. Bailey*,
  No. CV1201716DMGFMOX, 2013 WL 12323847 (C.D. Cal. Jan. 4, 2013) ....12

*Guinan, et al. v. Sperling, et al.*,
  No. CV2016-005901 (Ariz. Super. Ct. April 25, 2017) ......................................16

*Heckermann v. Montross, et al.*,
  Case No. 17-cv-1673 (D.Del. April 1, 2020)........................................................16

*In re Ambac Fin. Grp., Inc., Derivative Litig.*,
  257 F.R.D. 390 (S.D.N.Y. 2009) ........................................................6, 7

*In re Beazer Homes USA, Inc. Derivative Litigation*,
  Case No. 1:19-cv-3377-LMM (N.D. Ga.) ........................................................8

*In re CenturyLink, Inc. Sec. Litig.*,
  Case No. 2:19-cv-01629-CBM-GJS (C.D. Cal.) ........................................................8

ii

*In re ComScore, Inc. Shareholder Derivative Litigation*,
  Case No. 1:16-cv-09855-JGK (S.D.N.Y.) ...........................................................16

*In re comScore, Inc. Virginia Shareholder Derivative Litigation*,
  No. CL-2016-0009465 (Va. Cir. Ct., Fairfax Cnty.) ...........................................15

*In re Foundry Networks, Inc. Derivative Litig.*,
  No. C-06-05598RMW, 2007 WL 485974 (N.D. Cal. Feb. 12, 2007) .................18

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
  209 F.R.D. 447 (C.D. Cal. 2002) ........................................................................18

*In re Henry Schein, Inc. Derivative Litigation*,
  1:19-cv-06485 (E.D.N.Y. Dec. 3, 2020) .............................................................16

*In re HP Derivative Litig.*,
  No. 5:10-CV-03608 EJD, 2011 WL 5914216 (N.D. Cal. Nov. 28, 2011) ..........10

*In re India Globalization Capital, Inc., Derivative Litig.*,
  No. DKC 18-3698, 2020 WL 2097641 (D. Md. May 1, 2020) ..........................17

*In re Inogen, Inc. Sec. Litig.*,
  Case No. 2:19-cv-01643-FMP-ADR (C.D. Cal) ...................................................8

*In re JPMorgan Chase & Co. S'holder Derivative Litig.*,
  No. 08 CIV. 974 (DLC), 2008 WL 4298588 (S.D.N.Y. Sept. 19, 2008) ............18

*In re MiMedx Group, Inc. Sec. Litig.*,
  Case No. 1:18-cv-00830-WMR (N.D. Ga.) ...........................................................8

*In re Network Assocs., Inc., Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) .................................................................13

*In re Nice Sys. Sec. Litig.*,
  188 F.R.D. 206 (D.N.J. 1999) .............................................................................19

JESUS MENDOZA'S MEMORANDUM OF LAW IN OPPOSITION TO JIM BISHOP'S MOTION TO
CONSOLIDATE AND FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF
COUNSEL (DKT. NO. 20); Case No. 2:20-cv-05300-ODW (JPRx)

*In re Oclaro, Inc. Derivative Litig.*,
    No. C-11-3176 EMC, 2011 WL 4345099 (N.D. Cal. Sept. 14, 2011)...............12

*In re Pac. Enterprises Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...........................................................................14

*In re PTC Therapeutics, Inc. Derivative Litigation*,
    Case No. 2:17-cv-07216-KM-MAH (D.N.J. July 27, 2018)..............................16

*In re Shubh Hotels Pittsburgh, LLC*,
    495 B.R. 274 (Bankr. W.D. Pa. 2013) ..................................................................6

*In re Silver Wheaton Corp. Securities Litigation*,
    2:15-cv-05146 (C.D. Cal. Aug 6, 2020) .............................................................17

*In re Stivers*,
    31 B.R. 735 (Bankr. N.D. Cal. 1983) ...................................................................6

*In re YogaWorks, Inc. Sec. Litig.*,
    Case No. 2:18-cv-10686-CJC-SK (C.D. Cal.)......................................................8

*Johnson v. Carlucci*,
    2:19-cv-15812 (D.N.J. Dec. 21, 2020) ...............................................................16

*Kahn v. Chase Manhattan Bank*,
    131 F.3d 131 (2d Cir. 1997)..................................................................................6

*Kistenmacher v. Atchison*,
    No. 10437-VCS, 2020 WL 2620676 (Del. Ch. May 22, 2020).........................15

*Moradi v. Adelson*, No. 11-CV-00490-GMN-RJJ,
    2011 WL 5025155 (D. Nev. Oct. 20, 2011) ......................................................12

*Pirnik v. Fiat Chrysler Automobiles, N.V.*,
    15-cv-7199 (S.D.N.Y. Sept. 5, 2019) .................................................................17

iv

*Pyott v. Louisiana Mun. Police Employees' Ret. Sys.*,
   74 A.3d 612 (Del. 2013) ...................................................................................11

*Res. Renewal Inst. v. Nat'l Park Serv.*,
   No. C 16-0688 SBA, 2016 WL 11673178 (N.D. Cal. Sept. 2, 2016) ..................6

*Sollins*, v. *Alexander*,
   No. 0060127/2006, 2006 WL 4682189 (N.Y. Sup. Ct. Apr. 11, 2006) .............13

*Tugaw Ranches, LLC v. United States Dep't of the Interior*,
   No. 4:18-CV-00159-DCN, 2020 WL 61282 (D. Idaho Jan. 6, 2020) ..................6

*United States v. Bd. of Ed. of Waterbury Conn.*,
   605 F.2d 573 (2d Cir. 1979)................................................................................5

*Yousefi v. Lockheed Martin Corp.*,
   70 F. Supp. 2d 1061 (C.D. Cal. 1999) ..............................................................18

**<u>Rules</u>**

Fed. R. Civ. P. 24 ...................................................................................5, 7

Plaintiff Jesus Mendoza ("Mendoza") respectfully files this opposition to Jim Bishop's ("Bishop") Motion to Consolidate and for Appointment as Lead Plaintiff and Approval of Selection of Counsel (the "Motion") (Dkt. No. 20).

## I.    PRELIMINARY STATEMENT

As an initial matter, Bishop's Motion is improperly before the Court as the action *Mendoza v. Ni, et al*., Case No. 2:20-cv-05300-ODW (JPRx) (the "*Mendoza* Action") is stayed. (*See* Dkt. No. 11). Bishop is not a party to the *Mendoza* Action and thus does not have the ability to lift the stay or seek the relief he requests. Notably, Bishop does not even acknowledge the stay – which is concerning when he and his counsel are seeking leadership positions. Given the stay, the proper mechanism for Bishop to bring this Motion was first to file a motion for intervention in the *Mendoza* Action. As Bishop has failed to bring such a motion, the Court cannot consider the inappropriately filed Motion at this time.

Moreover, motions seeking consolidation of two or more actions are filed in the lower-numbered case. Bishop failed to follow proper procedure and rather has chosen to engage in what can only been seen as procedural gamesmanship as he: (i) initially filed this motion in his later-filed case *Bishop v. Ni, et al.,* Case No. 2:20-cv-10657-ODW (JPRx) that was transferred in this Court from the United States District Court for the District of Delaware (the "*Bishop* Action" and with the *Mendoza* Action, the "Derivative Actions"); (ii) is seeking to close the first-filed *Mendoza* Action in favor of the *Bishop* Action; and (iii) filed the Motion in the *Mendoza* Action – with the incorrect caption – without even acknowledging its procedural posture. Bishop's Counsel (defined below) routinely files motions for consolidation and for appointment of lead plaintiff and counsel in the lower-filed case. They do not provide any reason why they uncharacteristically strayed from that practice here.

1

Despite Bishop's procedural missteps, Mendoza further opposes the Motion on substantive grounds. <u>First</u>, consolidation of the Derivative Actions and appointment of counsel are unnecessary because the first-filed *Mendoza* Action is stayed. Rather, it would be more appropriate to consider these requests after the stay of the *Mendoza* Action is lifted pursuant to the stay stipulation.[1] Bishop filed a nearly identical stay stipulation when his case was pending in Delaware. Thus, it appears that if his motion is granted, then Bishop will merely stay this action. The motive for this maneuver is to improperly squeeze out Mendoza and his counsel from litigating this action. Indeed, during the meet and confer process, counsel for Mendoza offered a compromise for Mendoza and Bishop, along with their counsel, to work on the case evenly and share the results, if any. But rather than work cooperatively, counsel for Bishop at Herman Jones LLP ("Herman Jones") proposed that counsel for Mendoza accept a very small percentage of any fees earned in this litigation, if any are earned, without doing any more work. *See* Declaration of Timothy Brown ("Brown Decl."), filed herewith, at ¶4. The Court should not reward these lawyer-driven maneuvers solely designed to squeeze out other concerned shareholders and their counsel.

<u>Second</u>, Bishop and his counsel, Herman Jones, Robbins Geller Rudman and Dowd LLP ("Robbins Geller"), Byrne & Nixon LLP ("Byrne & Nixon") and the

---

[1] The *Mendoza* Action is stayed "pending the earlier of (i) the filing of an answer to the amended complaint by the defendants in the Related Securities Class Action (*Mendoza et al. v. HF Foods Group Inc. et al.*, 2:20-cv-02929-ODW (JPRx)), or (ii) the decision on any appeal of dismissal of the Related Securities Class Action with prejudice or the deadline to file a notice of appeal if one is not filed." (Dkt. No. 11, ¶1).

JESUS MENDOZA'S MEMORANDUM OF LAW IN OPPOSITION TO JIM BISHOP'S MOTION TO CONSOLIDATE AND FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL (DKT. NO. 20); Case No. 2:20-cv-05300-ODW (JPRx)

Law Offices of Timothy L. Miles ("Miles," and collectively, "Bishop's Counsel"), have not shown that they are more qualified or capable of leading the Derivative Actions than Mendoza and his counsel, The Rosen Law Firm, P.A. ("Rosen Law") and The Brown Law Firm, P.C. ("Brown Law" and with Rosen Law, "Mendoza's Counsel"). Despite Bishop making a demand for books and records under Delaware General Corporation Law §220 (the "220 Demand"), Bishop provides no compelling reason for his and his counsel's appointment in leadership positions. The Motion is devoid of any specifics demonstrating that Bishop's complaint is more compelling than Mendoza's complaint or that the documents from the 220 Demand were utilized.

Further, Bishop, an individual, has retained four law firms in this litigation and requests that the Court appoint three firms to lead the litigation. Bishop provides no justification for this request to have so many firms involved. Nor does he explain how the firms plan to litigate the *Bishop* Action efficiently. It appears on the face of the Motion that Bishop is unaware of the roles that his four law firms will be playing in the case.

Mendoza and his counsel, on the other hand, have vigorously pursued this derivative litigation, have already demonstrated their leadership, and are working cooperatively together, as well as with Defendants. Mendoza filed the first derivative complaint on behalf of HF Foods Group Inc. ("HF Foods" or the "Company") which was thoroughly investigated and carefully drafted. Rosen Law and Brown Law have a proven track record of working together and independently on behalf of corporations and shareholders. Contrary to the Motion's claim, neither Mendoza nor his counsel, Rosen Law, face any potential conflict proceeding in the Derivative Actions. Mendoza is not involved in the securities class action, *Mendoza*

3

*v. HF Foods Group Inc., et al*., Case No. 2:20-cv-02929-ODW (JPRx) (C.D. Cal.) (the "Securities Class Action"). Neither Mendoza nor Rosen Law moved for leadership positions in the Securities Class Action and they are not currently involved in any role in that case.

Accordingly, the Court should deny Bishop's Motion in its entirety on both procedural and substantive grounds.

### A. Background

Mendoza commenced his action in this Court on June 15, 2020. (Dkt. No. 1). After much discussion and in the interest of judicial economy and for the Company's benefit, the parties negotiated a stay of his action by entering in the Stipulation and [Proposed] Order to Stay the Litigation (the "Stay") (Dkt. No. 10). On July 8, 2020, the Court entered the Order to Stay Litigation (the "Stay Order") (Dkt. No. 11). Pursuant to the Stay Order, the *Mendoza* Action is stayed until the earlier of: (i) the filing of an answer to the amended complaint by defendants in the related Securities Class Action, or (ii) the decision on any appeal of dismissal of the Securities Class Action with prejudice or the deadline to file the appeal if one is not filed. (Stay Order at ¶1). The Stay Order provides that "Subject to applicable federal or local rules, ***both Plaintiff and Defendants*** shall have the right to move this Court to lift the stay of this action so long as such party provides at least thirty (30) days' written notice to the other parties prior to filing such a motion." (Stay Order at ¶4) (emphasis added). The Stay currently is in effect.

On August 21, 2020, Bishop filed a derivative complaint on behalf of HF Foods in the District of Delaware. On October 20, 2020, Bishop and Defendants filed the Stipulation and [Proposed] Order to Stay Litigation – which was nearly identical to the Stay in the *Mendoza* Action. Rather than evaluate the proposed stay,

4

Judge Richard G. Andrews entered an oral order indicating that he was inclined to transfer the *Bishop* Action to this Court noting that the Securities Class Action was pending in the Central District of California, HF Foods's executive offices are in California, and that Bishop could have brought his action in the Central District of California. (*Bishop* Action, Dkt. No. 12) (Ex. 1 to Brown Decl.). Judge Andrews ordered any party opposing a transfer to submit a brief in support of its opposition. *Id*.  No party filed a response to Judge Andrews's order, and the *Bishop* Action was transferred to this Court on November 19, 2020.

On January 4, 2020, Bishop incorrectly filed his Motion in his case. Likely recognizing this error, Bishop filed the same Motion papers in the *Mendoza* Action on January 5, 2020.

## II.    ARGUMENT

### A. Bishop's Motion Should Be Denied Because He Lacks Standing and His Motion Violates the Stay

#### i.  Bishop Lacks Standing

Before making his motion, Bishop was required to obtain an order from the Court to lift the Stay in the *Mendoza* Action. To do this, Bishop was first required to move to intervene because he is not a party in the *Mendoza* Action. The purpose of intervention under Fed. R. Civ. P. ("Rule") 24, whether of right or permissive, is to enable those satisfying requirements of Rule 24 "to assert their interests in all pending aspects of the lawsuit, within the limitations of purpose imposed at the time of intervention." *United States v. Bd. of Ed. of Waterbury Conn.*, 605 F.2d 573, 576 (2d Cir. 1979) (emphasis added); *cf. Ashworth v. Albers Med., Inc*., 229 F.R.D. 527, 528-29 (S.D. W.Va. 2005) (moving to intervene to obtain stay of discovery).

Bishop failed to intervene, and thus has no standing to seek relief here. *See Kahn v. Chase Manhattan Bank*, 131 F.3d 131 (2d Cir. 1997) (citing cases). Even had Bishop sought to intervene, it would have been futile. *See, e.g.*, *Res. Renewal Inst. v. Nat'l Park Serv.*, No. C 16-0688 SBA, 2016 WL 11673178, at *3 (N.D. Cal. Sept. 2, 2016) (denying intervention as to stayed claims finding intervention premature). Bishop cannot demonstrate a personal, legal interest that would be prejudiced absent his intervention. Bishop purports to represent the Company, but the Company is already adequately represented in the *Mendoza* Action.  Moreover, as the *Mendoza* Action is stayed, the *Bishop* Action would not lag behind. *See, e.g.*, *Tugaw Ranches, LLC v. United States Dep't of the Interior*, No. 4:18-CV-00159-DCN, 2020 WL 61282, at *2 (D. Idaho Jan. 6, 2020) (denying intervention and refusing to lift a stay finding it was "unnecessary" and "would waste litigant and judicial resources."); *In re Stivers*, 31 B.R. 735, 737 (Bankr. N.D. Cal. 1983) (denying intervention to obtain relief from stay where proposed intervenor had no legal as opposed to mere practical interest in lifting stay); *Meridian Financial Advisors, LTD v. Contract Purchase & Design, Inc.* (*In re Shubh Hotels Pittsburgh, LLC*), 495 B.R. 274, 283-84 (Bankr. W.D. Pa. 2013) (denying intervention bid to stay action based on purported economic – as opposed to an actual legal – interest in the case).

*In re Ambac Fin. Grp., Inc., Derivative Litig.*, 257 F.R.D. 390 (S.D.N.Y. 2009) illustrates this point. There, the court consolidated three derivative actions brought by Ambac shareholders (the "New York actions").  The Delaware Chancery Court stayed later filed derivative actions in deference to the New York actions. *Id.* at 392. Frustrated by the stay of their case, the Delaware plaintiffs sought to intervene in the New York actions, arguing that they could do a better job, and

moved for the appointment of co-lead plaintiff and co-lead counsel. *Id.* The court denied the motion to intervene, not even reaching the co-lead motion. The court observed that in related derivative cases, all the plaintiffs in effect represent the same party – the company at issue, there Ambac. *Id*. at 393. But the proposed intervenors failed to show (as required) that the existing plaintiffs would fail to represent the interests of Ambac adequately in the New York actions. *Id.* The Delaware plaintiffs protested that their complaint was "much more detailed" than in the New York actions, and that counsel for the proposed intervenors would more "vigorously prosecute" the claim on behalf of the company. *Id.* The court held that those differences were insufficient for purposes of Rule 24 as "[t]he mere fact that plaintiffs also assert additional and different claims from those asserted by the Proposed Intervenors does not render the former inadequate to represent the interests of the latter, particularly where, as here, the suit is brought derivatively on behalf of the corporation." *Id.* at 394.

The same is true here. Bishop has not – and cannot – demonstrate why he would be prejudiced absent intervention. Both Mendoza and Bishop bring these actions on behalf of HF Foods, and Mendoza and his counsel are more than capable of litigating the claims at issue. As the lead *Mendoza* Action is stayed, the Court and parties are now burdened by this unnecessary Motion. Because Bishop has no standing to seek relief in the Action, and because he has not, and cannot, intervene as a party to seek relief, the Motion should be denied.

### ii. Bishop Cannot Lift the Stay of the Mendoza Action

Bishop's Motion ignores that the *Mendoza* Action is stayed because the Stay requires the Motion's denial regardless of the merits. The Stay can only be lifted by "***Plaintiff and Defendants***." (Dkt. No. 11, ¶4) (emphasis added). On this ground

7

alone, Bishop's Motion should be denied as the requested relief cannot be considered while the Stay is in place. Bishop and his counsel should not be rewarded with leadership positions for their procedurally improper tactics to circumvent the Stay Order.

Bishop's Counsel is well aware of the routine practice that motions to consolidate and appoint lead plaintiff and counsel are filed in the lower-numbered action and that upon consolidation, courts routinely close the later-filed cases. *See, e.g.*, *In re Inogen, Inc. Sec. Litig.*, Case No. 2:19-cv-01643-FMP-ADR (C.D. Cal) (Robbins Geller filing motion for consolidation and appointment of lead plaintiff and lead counsel in only first-filed action); *In re CenturyLink, Inc. Sec. Litig.*, Case No. 2:19-cv-01629-CBM-GJS (C.D. Cal.) (same); *In re YogaWorks, Inc. Sec. Litig.*, Case No. 2:18-cv-10686-CJC-SK (C.D. Cal.) (same); *In re Beazer Homes USA, Inc. Derivative Litigation,* Case No. 1:19-cv-3377-LMM (N.D. Ga.) (Ex. 2 to Brown Decl.) (Both Herman Jones and Robbins Geller joining consent motion to consolidate related actions that directed the later-filed cases – including their highest numbered case – closed); *In re MiMedx Group, Inc. Sec. Litig.*, Case No. 1:18-cv-00830-WMR (N.D. Ga.) (Ex. 3 to Brown Decl.) (Robbins Geller, when Messrs. Herman and Jones were still associated with Robbins Geller, filing motion to consolidate in only the first-filed action and seeking all filings to be filed in the first-filed action).

Here, however, Bishop seeks the unusual request of closing the first-filed *Mendoza* Action in favor of the later-filed *Bishop* Action. Bishop and his counsel provide no explanation for Bishop's Counsel to abandon their standard practice on how they file similar motions.

JESUS MENDOZA'S MEMORANDUM OF LAW IN OPPOSITION TO JIM BISHOP'S MOTION TO CONSOLIDATE AND FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL (DKT. NO. 20); Case No. 2:20-cv-05300-ODW (JPRx)

**B. Bishop's Motion Should be Denied Even if Bishop Has
Standing and His Motion Did Not Violate the Stay**

**i. Consolidation and Appointment of Lead Plaintiff and
Counsel is Premature**

There is no urgency to consolidate and appoint lead plaintiff and lead counsel because the *Mendoza* Action is stayed and, thus, Bishop will not be prejudiced if the Court permitted consolidation and appointed leadership positions at a later date. Courts regularly deny requests to consolidate and/or appoint leadership positions until after a stay is lifted. *See, e.g.*, *Bao v. Page*, No. 19-CV-00314-JSW, 2020 WL 1671556, at *3 (N.D. Cal. Feb. 5, 2020) (court declining motion to consolidate derivative actions as immature when cases stayed pending events in other related actions and will address consolidation after stay is lifted); *Bao v. Page*, No. 19-CV-00314-JSW (N.D. Cal.) (Ex. 4 to the Brown Decl.) (court declining to appoint counsel while motion to stay in effect); *Kenna v. Aron*, Case No. 1:19-cv-09148-AJN (S.D.N.Y. Oct. 17, 2019) (Ex. 5 to the Brown Decl.) (denying request to lift stay to consolidate actions and holding that "The parties may move for consolidation and to appoint lead counsel when stay is lifted.").

The Court should not proceed with consolidation or appointing a lead plaintiff and counsel until the Stay is lifted in the *Mendoza* Action. Bishop agreed to stay his action when it was pending in Delaware. Accordingly, Bishop will likely seek a stay here as soon as the Derivative Actions are consolidated and leadership positions appointed. Bishop has not provided any support that there is good cause or necessity to address consolidation and leadership at this juncture.

Rather, the only reason Bishop and his counsel filed the Motion was to attempt to squeeze out Mendoza and his counsel from the litigation. Upon meeting and conferring about this Motion with Bishop's Counsel, rather than burden the

9

Court with unnecessary motion practice, Mendoza's Counsel acted reasonably and offered a compromise to work on the case evenly on behalf of HF Foods's benefit. Brown Decl. at ¶5. Bishop's Counsel outrightly refused to consider this solution. *Id.* at ¶6. Instead, Bishop's Counsel offered a small percentage of the case to Mendoza and his counsel if they abandoned the litigation. *Id.* at ¶4. Naturally, Mendoza's Counsel did not agree to that proposal. *Id.* Unfortunately, a compromise could not be achieved and, thus, this Motion was filed. If Bishop were concerned about avoiding duplicative efforts and serving the Company's best interest, he would have considered an agreement to lift the Stay of the *Mendoza* Action, consolidate the Derivative Actions, and to work cooperatively with Mendoza and Bishop, together with the cooperation of their respective counsel.

Independently, because the Derivative Actions are both pending before the same Court and Defendants filed a Notice of Related Case in the *Bishop* Action (*Bishop* Action, Dkt. No. 23) stating it was related to the *Mendoza* Action, the Court is already equipped to streamline the Derivative Actions without consolidation. *See In re HP Derivative Litig.*, No. 5:10-CV-03608 EJD, 2011 WL 5914216, at *4 (N.D. Cal. Nov. 28, 2011) (denying motion to consolidate three shareholder derivative actions against same nominal defendant where, in addition to differences between complaints, actions were already related before same judge to ease management coordination).

Lastly, both Mendoza and Bishop acknowledge that their cases are impacted by the outcome of the Securities Class Action. Indeed, that is the basis for the Stay in the *Mendoza* Action and the stated reason for the stay sought by Bishop before his case was transferred to this Court. (Dkt. No. 10 at 2); (Ex. 6 to Brown Decl.).

Given that the Securities Class Action is still at the pleading stage and discovery in that case is stayed, Bishop's Motion is premature.

### ii. Bishop's 220 Demand Does Not Support Granting His Motion

The Delaware Supreme Court has held that a shareholder who files a complaint without first making a 220 Demand is not evidence that the shareholder is presumptively inadequate. *Pyott v. Louisiana Mun. Police Employees' Ret. Sys.*, 74 A.3d 612, 618 (Del. 2013). Thus, Mendoza's strategic decision to file a complaint without making a 220 Demand neither impugns his adequacy nor supports Bishop's Motion.

Indeed, Mendoza's strategy was appropriate, as Bishop's Motion does not reference any documents that he received in the 220 Demand that he claims are so critical. So far, Bishop's review of internal company documents has not culminated in any advantage or support for his or his counsel's leadership. When the *Bishop* Action was pending before Judge Andrews in Delaware, Bishop agreed to stay his action and filed a stipulation that was almost identical to the stipulation to stay that was negotiated extensively by the parties in the *Mendoza* Action. When Judge Andrews denied the stay and instead gave Bishop and Defendants the opportunity to state why the *Bishop* Action should remain in Delaware and not be transferred to this Court, no response was filed. Thus, despite claiming that the Company documents purportedly show HF Foods's preference of the filing of derivative actions in Delaware (Dkt. No. 21 at 7, n.4), Bishop did not put forth that argument when given the opportunity. Bishop's strategy of filing in another Court to get the upper hand over Mendoza was unsuccessful when Judge Andrews decided to transfer the *Bishop* Action from Delaware. Thus, not only was it proper for Mendoza

11

to commence his action in this Court, but Bishop squandered the opportunity to use the documents he received from the 220 Demand when Judge Andrews questioned why Bishop's case should remain in Delaware. Thus, it is of no moment that Bishop and Mendoza, and their respective counsel, chose different paths to proceed on bringing derivative actions on behalf of HF Foods.

### iii. That Mendoza Filed the First Action Weighs Against Bishop's Motion

Bishop and his counsel have not shown that they warrant leadership positions and are more zealous advocates for HF Foods than Mendoza and Mendoza's Counsel. In fact, Mendoza and his counsel filed the first derivative complaint—which Bishop and his counsel had the opportunity to study for over two months before filing the *Bishop* Action. Mendoza and his counsel filed a well-informed, thoroughly investigated, and thoughtfully drafted complaint. If the Court believes that the pleadings in the Derivative Actions are of similar quality, however, this fact should tip the scales in favor of Mendoza and his chosen firms, Rosen Law and Brown Law, in leadership positions rather than Bishop and his counsel. *See Moradi v. Adelson*, No. 11-CV-00490-GMN-RJJ, 2011 WL 5025155, at *3 (D. Nev. Oct. 20, 2011) (court finding "it would be appropriate" to appoint counsel from the first-filed action); *In re Oclaro, Inc. Derivative Litig.*, No. C-11-3176 EMC, 2011 WL 4345099, at *4 (N.D. Cal. Sept. 14, 2011) (appointing counsel who filed the first derivative action when actions were at similar, early procedural postures); *Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003), *aff'd sub nom. In re HealthSouth Corp. Shareholders Litig.*, 847 A.2d 1121 (Del. 2004) ("first-filed factor" is important when "consideration of other relevant factors does not tilt heavily in either direction"); *Easton v. Bailey*, No. CV1201716DMGFMOX, 2013 WL

12

12323847, at *1 (C.D. Cal. Jan. 4, 2013) (same); *Sollins*, v. *Alexander*, No. 0060127/2006, 2006 WL 4682189 (N.Y. Sup. Ct. Apr. 11, 2006) (similar).

Bishop has not raised any arguments that Mendoza's complaint is lacking or not well investigated and pled. Despite making a 220 Demand, it is important to note that Bishop has not pointed to any valuable facts, allegations, or theories in his complaint that are missing from Mendoza's complaint. In fact, when arguing for consolidation, Bishop acknowledged that the Derivative Actions contain similar claims against identical defendants, arise from a common nucleus of facts, and involve largely overlapping questions of law. (Dkt. No. 21 at 2). Bishop continued, stating that derivative actions that are "substantially identical" should be consolidated. (Dkt. No. 21 at 3). Accordingly, Bishop has not demonstrated, and cannot demonstrate, that his pleading is superior to Mendoza's complaint in order to favor the granting of Bishop's Motion.

### iv. Mendoza and His Counsel Do Not Face Any Conflict in Their Participation in the Derivative Actions

Bishop's argument that he and his counsel are better choices to lead the derivative litigation because Mendoza and Rosen Law initiated the related Securities Class Action is a red herring. Mendoza and his counsel are not involved in the Securities Class Action. Neither Mendoza nor Rosen Law sought leadership positions in the Securities Class Action. The Court appointed a lead plaintiff and lead counsel in the Securities Class Action who are now the litigating on behalf of HF Foods investors. (*See* Securities Class Action, Dkt. No. 40). In actions governed by the PSLRA, it is the lead plaintiff who oversees the litigation. *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1032 (N.D. Cal. 1999) ("The PSLRA seeks to place the lead plaintiff in charge of conduct of the litigation on behalf of

13

the class. The lead plaintiff owes a fiduciary duty to all members of the proposed class."). Thus, Mendoza's prior involvement in the Securities Class Action is not an issue.

Accordingly, Bishop's reliance on *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) is misplaced. In *Pacific Enterprises*, the same law firm was appointed as co-lead counsel for a consolidated derivative action in state court as well as appointed co-lead counsel in the related federal securities class action. Because the firm had court-appointed leadership positions in both types of actions, questions were raised about the fairness of a global settlement. Here, it is clear that Mendoza and his counsel are no longer involved in the Securities Class Action given that the Court appointed a different HF Foods investor and his counsel as lead plaintiff and lead counsel. Thus, there is no genuine concern that Mendoza and his counsel face any potential conflict.

Moreover, Mendoza's involvement in the Securities Class Action and in the *Mendoza* Action supports his continued interest in participating in this litigation, recognizing that he, other HF Foods investors, and the Company itself have been harmed. Rather than sit on the sidelines, Mendoza, a concerned HF Foods shareholder, brought his derivative action with clear objectives at bar: to protect the long-term value of the Company; to ensure that HF Foods is not damaged further by Defendants' conduct; and to prevent similar conduct from occurring again. In furtherance of these objectives, Mendoza decided to stay his action so that the Company would not have to commit time and resources defending the *Mendoza* Action while the motion to dismiss in the Securities Class Action was pending.

### v. Bishop's Counsel is Not More Qualified or Capable than Mendoza's Counsel

Bishop and his counsel have not shown that they are more qualified or capable of leading the litigation than Mendoza's Counsel, Rosen Law and Brown Law. Mendoza's Counsel are highly experienced in the field of shareholder litigation and have successfully litigated numerous shareholder derivative actions and securities class actions. The firm resumes of Rosen Law and Brown Law, which are attached as Exhibits 7 and 8 respectively to the Brown Decl., reflect the firms' respective credentials and significant experience in this regard.

Not only do the firms have substantial experience individually, Rosen Law and Brown Law have collaborated on numerous cases and have been appointed co-lead counsel or have agreed on other leadership structures in actions in courts around the country. The firms' recent noteworthy achievements in shareholder derivative actions include securing approval of a settlement on behalf of SeaWorld Entertainment, Inc. comprised of a $12.5 million cash payment to SeaWorld as well as substantial corporate governance reforms. *Kistenmacher v. Atchison*, No. 10437-VCS, 2020 WL 2620676, at *1 (Del. Ch. May 22, 2020). Additionally, Rosen Law and Brown Law were co-lead counsel for plaintiffs in Virginia state court and assisted in securing a $10 million cash payment to comScore, Inc. as well as caused comScore to institute a vast array of reforms to its corporate governance. *In re comScore, Inc. Virginia Shareholder Derivative Litigation*, No. CL-2016-0009465

15

(Va. Cir. Ct., Fairfax Cnty.); *In re ComScore, Inc. Shareholder Derivative Litigation*, Case No. 1:16-cv-09855-JGK (S.D.N.Y.).[2]

Further, in addition to leading derivative litigation, Rosen Law has been appointed lead or co-lead counsel in numerous securities class actions throughout the country. Indeed, since 2013, Rosen Law has been ranked yearly by ISS Securities Class Action Services as one of the top three firms in the nation as to the number of securities class action settlements obtained for investors. Some of Rosen Law's recent notable successes include securing a $250 million settlement for Alibaba Group Holding Ltd. investors, *Christine Asia Co Ltd. v. Alibaba Group Holding Ltd.*, No. 15-md-2631 (S.D.N.Y. Oct. 16, 2019), securing a $110 million settlement for the shareholders of Fiat Chrysler Automobiles, N.V., *Pirnik v. Fiat*

_____

[2] Other recent cases in which Rosen Law and Brown Law served as co-lead counsel in derivative litigation and achieved favorable settlements for the respective subject companies include: *Johnson v. Carlucci*, 2:19-cv-15812 (D.N.J. Dec. 21, 2020) (settlement on behalf of American Renal Associates, Inc. comprised of reforms to the company's governance and business ethics practices as well as recouping over $1.6 million of director compensation); *In re Henry Schein, Inc. Derivative Litigation*, 1:19-cv-06485 (E.D.N.Y. Dec. 3, 2020) (settlement on behalf of Henry Schein, Inc. comprised of substantial corporate governance reforms to the company's antitrust and merger and acquisition policies); *Heckermann v. Montross, et al.,* Case No. 17-cv-1673 (D.Del. April 1, 2020) (settlement on behalf of CPI Card Group, Inc. compromised of corporate governance reforms); *In re PTC Therapeutics, Inc. Derivative Litigation*, Case No. 2:17-cv-07216-KM-MAH (D.N.J. July 27, 2018) (settlement that resulted in PTC Therapeutics, Inc's adoption of substantial corporate governance reforms) and *Guinan, et al. v. Sperling, et al.*, No. CV2016-005901 (Ariz. Super. Ct. April 25, 2017) (settlement that reduced indemnification rights of officers and directors of Apollo Education Group. Inc. and created right of Apollo's successor to make claims against the officers and directors).

16

*Chrysler Automobiles, N.V.*, 15-cv-7199 (S.D.N.Y. Sept. 5, 2019), and securing a $41.5 million settlement for shareholders of Silver Wheaton Corp., *In re Silver Wheaton Corp. Securities Litigation,* 2:15-cv-05146 (C.D. Cal. Aug 6, 2020). Rosen Law's securities class action experience benefits their litigation of derivative cases because securities class actions involve many of the same or related legal and factual issues. Derivative actions, as they do here, commonly contain allegations related to already pending securities class actions.

Likewise, Brown Law has a strong track record of achieving excellent results in litigation throughout the country on behalf of corporations and their shareholders. Brown Law is currently litigating shareholder derivative actions in numerous courts throughout the country. *See In re India Globalization Capital, Inc., Derivative Litig.*, No. DKC 18-3698, 2020 WL 2097641, at *4 (D. Md. May 1, 2020) ("In addition to the impressive resumes of named counsel in this case [Brown Law and another firm were appointed co-lead counsel], both firms have extensive experience in shareholder derivative litigation."

In sum, Bishop's Counsel does not have any unique capabilities over the unquestionable experience and prior success of Rosen Law and Brown Law. These firms possess the financial resources, personnel, and substantive expertise necessary to litigate the case vigorously, and have served, and will continue to serve, the best interests of all derivative plaintiffs.

### vi. Bishop Seeking the Appointment of Three Firms is Excessive and Unnecessary

Although common to appoint one or two firms to leadership positions in derivative litigation, Bishop is represented by four law firms, three of which he requests be granted leadership positions. Retaining four law firms is excessive and

supports the presumption that Bishop's Counsel, rather than Bishop himself, are leading the litigation. As one court explained:

> The very abuses that led to the reform embodied by the PSLRA permeate the world of derivative litigation as well. In both contexts *there is a need to have plaintiffs who can adequately represent other shareholders and exercise a meaningful role in critical decisions* such as whether to file suit or to settle. *Otherwise, it is the attorneys who will completely control the litigation* and make these decisions based on their own financial interests rather than the interest of the corporation and its shareholders.

*In re JPMorgan Chase & Co. S'holder Derivative Litig.*, No. 08 CIV. 974 (DLC), 2008 WL 4298588, at *10 (S.D.N.Y. Sept. 19, 2008) (emphasis added). Courts have routinely declined to appoint three firms in leadership positions. *See In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002) (court declining to appoint lead plaintiffs who are represented by three firms and concerned that the plaintiffs are not steering the litigation); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1072 (C.D. Cal. 1999) (court denying appointment of three firms as counsel and selecting only one firm); *In re Foundry Networks, Inc. Derivative Litig.*, No. C-06-05598RMW, 2007 WL 485974, at *2 (N.D. Cal. Feb. 12, 2007) (after tentative ruling calling into question the need for three firms, plaintiff said three firms not necessary).

Bishop gives no justification for why he has currently hired four law firms or why he needs three of them to lead the case.[3] Nor does he provide any details about

---

[3] Interestingly, the signature blocks in Bishop's complaint filed in the District of Delaware include three law firms. They are Herman Jones and Miles, which are two of the four firms that comprise Bishop's Counsel, as well as another firm (a fifth

18

how the work in the litigation will be divided among the firms. It is unclear on the face of Bishop's papers what the role is for each of the firms in this litigation. For instance, Bishop seeks Robbins Geller to be "additional Counsel" in his motion (Dkt. No. 20), "Derivative Counsel" in the body of the memorandum (Dkt. No. 21 at 5, 7), but then the memorandum also refers to Robbins Geller as "Local Counsel" (Dkt. No. 21 at 1, 9). Likewise, Byrne & Nixon is referred to as "Liaison Counsel," and it also listed just as "Attorney for Jim Bishop." Liaison or local counsel are typically necessary for out-of-state attorneys to associate with attorneys admitted in this Court. Yet, Bishop retained two firms located in California. Furthermore, Bishop's Motion fails to discuss Byrne & Nixon's experience or its role in Bishop's representation, which cuts against its appointment as liaison counsel. Thus, it is unnecessary to appoint Byrne & Nixon as liaison counsel. *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 224 (D.N.J. 1999) (court holding "no compelling reason" to appoint liaison counsel particularly when movant did not set forth the role of proposed liaison counsel in submission); *Clair v. DeLuca*, 232 F.R.D. 523, 528 (W.D. Pa. 2006) (declining to appoint liaison counsel when no description of the firm's proposed duties.). Lastly, Herman Jones is seeking to be "Lead Counsel," but the signature block just lists them as "Attorneys for Plaintiff." That Bishop himself cannot articulate the titles and roles of each firm is evidence that he and his counsel cannot efficiently work the case and that too many firms are involved.

In contrast, Mendoza is represented by two firms who have a history of working together efficiently and effectively. *See supra,* II(B)(v).

_____

firm retained by Bishop) with a Delaware office, Deleeuw Law LLC. (*Bishop* Action, Dkt. No. 7) (Ex. 9 to Brown Decl.).

19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.    CONCLUSION

For all of the reasons stated herein, Mendoza respectfully requests that the Court deny Bishop's Motion in its entirety.

Dated: January 15, 2021                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/ Laurence M. Rosen*
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

**THE BROWN LAW FIRM, P.C.**
Timothy Brown
240 Townsend Square
Oyster Bay, NY 11771
Telephone: (516) 922-5427
Facsimile: (516) 344-6204
Email: tbrown@thebrownlawfirm.net

*Counsel for Plaintiff Jesus Mendoza*

JESUS MENDOZA'S MEMORANDUM OF LAW IN OPPOSITION TO JIM BISHOP'S MOTION TO CONSOLIDATE AND FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL (DKT. NO. 20); Case No. 2:20-cv-05300-ODW (JPRx)

## CERTIFICATE OF SERVICE

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows: I am the Managing Partner of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. I am over the age of eighteen.

On January 15, 2021, I electronically filed the following JESUS MENDOZA'S MEMORANDUM OF LAW IN OPPOSITION TO JIM BISHOP'S MOTION TO CONSOLIDATE AND FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL (DKT. NO. 20) with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on January 15, 2021.

/s/ *Laurence M. Rosen*
Laurence M. Rosen