Laurence M. Rosen (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff Jesus Mendoza*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS MENDOZA, derivatively on behalf of HF FOODS GROUP INC., <br><br> Plaintiff, <br><br> v. <br><br> ZHOU MIN NI, XIAO MOU ZHANG, CAIXUAN XU, JIAN MING NI, ZHEHUI NI, HONG WANG, CHAN SIN WONG, and REN HUA ZHENG, <br><br> Defendants, <br><br> and <br><br> HF FOODS GROUP INC., <br><br> Nominal Defendant. <br><br> [*Additional caption continues on following page*] | Case No. 2:20-cv-05300-ODW (JPRx) <br><br> **JESUS MENDOZA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION AND APPOINTMENT OF LEAD PLAINTIFF AND CO-LEAD COUNSEL IN THE EVENT THE COURT LIFTS THE STAY** <br><br> Date: March 8, 2021 <br> Time: 1:30 p.m. <br> Courtroom: 5D (1st Street Courthouse) <br> Judge: Hon. Otis D. Wright II |

|   |   |
|---|---|
| JIM BISHOP, Derivatively on Behalf of HF FOODS GROUP INC., | Case No. 2:20-cv-10657-ODW (JPRx) |
| Plaintiff, | |
| v. | |
| ZHOU MIN NI, XIAO MOU ZHANG, CAIXUAN XU, JIAN MING NI, ZHEHUI NI, HONG WANG, CHAN SIN WONG, and REN HUA ZHENG, | |
| Defendants, | |
| and | |
| HF FOODS GROUP INC., | |
| Nominal Defendant. | |

**TABLE OF CONTENTS**

I. BACKGROUND ...................................................................................................1

II. ARGUMENT........................................................................................................4

   A. Once the Stay is Lifted, The Actions Should be Consolidated............................4

   B. A Leadership Structure is Necessary for Effective Prosecution of the Actions Once the Stay is Lifted................................................................................................5

     1. Mendoza Should be Appointed Lead Plaintiff Once the Stay is Lifted ............6

     2. Rosen Law and Brown Law Should Be Appointed Co-Lead Counsel Once the Stay is Lifted ..................................................................................................7

       a. Rosen Law and Brown Law Have Extensive Experience, Which Supports Their Approval as Co-Lead Counsel................................................................7

       b. The Pleadings Support Appointing Rosen Law and Brown Law as Co-Lead Counsel Once the Stay is Lifted ...................................................................10

III. CONCLUSION .................................................................................................12

i

# **TABLE OF AUTHORITIES**

**Pages**

Cases

*Berg v. Guthart*,
  No. 5:14-CV-00515-EJD, 2014 WL 3749780 (N.D. Cal. July 30, 2014) .................. 5

*Biondi v. Scrushy*,
  820 A.2d 1148 (Del. Ch. 2003) ............................................................................... 11

*Christine Asia Co Ltd. v. Alibaba Group Holding Ltd.*,
  No. 15-md-2631 (S.D.N.Y. Oct. 16, 2019) ............................................................... 9

*Cohen v. Beneficial Indus. Loan Corp.*,
  337 U.S. 541 (1949) ................................................................................................... 6

*Dollens v. Zionts*, No. 01 C,
  2826, 2001 WL 1543524 (N.D. Ill. Dec. 4, 2001) ................................................. 6, 7

*Easton v. Bailey*,
  No. CV1201716DMGFMOX, 2013 WL 12323847 (C.D. Cal. Jan. 4, 2013) .......... 11

*Guinan, et al. v. Sperling, et al.*,
  No. CV2016-005901 (Ariz. Super. Ct. April 25, 2017) ............................................ 9

*Hacker v. Peterschmidt*,
  No. C06-03468, 2006 WL 2925683 (N.D. Cal. Oct. 12, 2006) ................................ 6

*Heckermann v. Montross, et al.*,
  Case No. 17-cv-1673 (D.Del. April 1, 2020) ............................................................ 8

*Horn v. Raines*,
  227 F.R.D. 1 (D.D.C. 2005) ....................................................................................... 7

*In re Adams Apple, Inc.*,
  829 F.2d 1484 (9th Cir. 1987) ................................................................................... 4

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  258 F.R.D. 260 (S.D.N.Y. 2009) ............................................................................... 6

*In re ComScore, Inc. Shareholder Derivative Litigation*,
  Case No. 1:16-cv-09855-JGK (S.D.N.Y.) ................................................................. 8

*In re comScore, Inc. Virginia Shareholder Derivative Litigation*,
  No. CL-2016-0009465 (Va. Cir. Ct., Fairfax Cnty.) ................................................. 8

*In re Comverse Tech., Inc. Derivative Litig.*,
  No. 06-CV-1849 NGG RER, 2006 WL 3761986 (E.D.N.Y. Sept. 22, 2006) ............ 7

*In re Equity Funding Corp. of Am. Sec. Litig.*,
  416 F. Supp. 161 (C.D. Cal. 1976) .......................................................................... 4

*In re Henry Schein, Inc. Derivative Litigation*,
  1:19-cv-06485 (E.D.N.Y. Dec. 3, 2020) ................................................................... 8

*In re India Globalization Capital, Inc., Derivative Litig.*,
  No. DKC 18-3698, 2020 WL 2097641 (D. Md. May 1, 2020) ................................. 9

*In re Oclaro, Inc. Derivative Litig.*,
  No. C-11-3176 EMC, 2011 WL 4345099 (N.D. Cal. Sept. 14, 2011) ..................... 11

*In re PTC Therapeutics, Inc. Derivative Litigation*,
  Case No. 2:17-cv-07216-KM-MAH (D.N.J. July 27, 2018) ..................................... 9

*In re Silver Wheaton Corp. Securities Litigation*,
  2:15-cv-05146 (C.D. Cal. Aug 6, 2020) ................................................................... 9

*Johnson v. Carlucci*,
  2:19-cv-15812 (D.N.J. Dec. 21, 2020) ..................................................................... 8

*KBC Asset Mgmt. NV on behalf of Chemed Corp. v. McNamara*,
  78 F. Supp. 3d 599 (D. Del. 2015) ....................................................................... 6, 7

*Kistenmacher v. Atchison*,
  No. 10437-VCS, 2020 WL 2620676 (Del.Ch. May 22, 2020) ................................. 8

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ................................................................................................. 4

*Levine v. Andreessen*,
  No. C 10-03608 JW, 2010 WL 11639935 (N.D. Cal. Nov. 1, 2010) ........................5

*MacAlister v. Guterma*,
  263 F.2d 65 (2d Cir. 1958) ..................................................................................5

*Moradi v. Adelson*, No. 11-CV-00490-GMN-RJJ,
  2011 WL 5025155 (D. Nev. Oct. 20, 2011) ........................................................11

*Nicolow v. Hewlett Packard Co.*,
  No. 12-05980 CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ..........................6

*Pirnik v. Fiat Chrysler Automobiles, N.V.*,
  15-cv-7199 (S.D.N.Y. Sept. 5, 2019) ...................................................................9

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759 (9th Cir. 1977) ................................................................................5

*Wiehl v. Eon Labs*,
  No. CIV.A. 1116-N, 2005 WL 696764 (Del. Ch. Mar. 22, 2005) .........................7

**<u>Rules</u>**

Fed. R. Civ. P. 23(g) ....................................................................................................7

Fed. R. Civ. P. 23.1 .....................................................................................................6

Fed. R. Civ. P. 42(a) ....................................................................................................4

**<u>Other Authorities</u>**

Manual For Complex Litigation (Fourth) § 10.224 (2004) .......................................10

As he stated in his opposition to Jim Bishop's ("Bishop") Motion to Consolidate and for the Appointment of Lead plaintiff and Approval of Selection of Counsel (Dkt. No. 24), Plaintiff Jesus Mendoza ("Plaintiff" or "Mendoza") believes that consolidation and appointment of a lead plaintiff and counsel is premature as the action *Mendoza v. Ni*, Case No. 2:20-cv-05300-ODW (JPRx) (the "*Mendoza* Action") is currently stayed and this relief should be addressed after the stay is lifted. If the Court is inclined to disagree, however, and prefers to address consolidation of the *Mendoza* Action with *Bishop v. Ni, et al.*, Case No. 2:20-cv-10657-ODW (JPRx) (the "*Bishop* Action" and with the *Mendoza* Action, the "Actions") and appointment of a lead plaintiff and counsel at this time, Mendoza respectfully requests that the Court enter an order: (1) consolidating the Actions; (2) appointing Mendoza as Lead Plaintiff; and (3) appointing The Rosen Law Firm, P.A. ("Rosen Law") and The Brown Law Firm, P.C. ("Brown Law") as Co-Lead Counsel (the "Motion").

Plaintiff is compelled to make this Motion in light of Bishop's consolidation and leadership motion (Dkt. No. 20).[1] Plaintiff's position, however, remains the same—the Court should not proceed with consolidation or appointing a lead plaintiff or counsel until the stay in the *Mendoza* Action is lifted. But, to the extent that the Court finds that the stay should be lifted in order to decide consolidation and appointment of leadership, the Court should appoint Plaintiff and his counsel in leadership roles.

## I. BACKGROUND

Plaintiff and his counsel should be appointed in leadership roles as they have already demonstrated their capabilities to prosecute this case on behalf of HF Foods Group Inc. ("HF Foods" or the "Company"). On June 15, 2020, Mendoza was the first to file a derivative action on behalf HF Foods. (Dkt. No. 1). After much discussion and in the interest of judicial economy and for the Company's benefit, the parties negotiated

---

[1] Bishop filed the same motion in the *Bishop* Action. (Dkt. No. 45).

a stay of this action by entering in the Stipulation and [Proposed] Order to Stay the Litigation (the "Stay") (Dkt. No. 10), which the Court ordered (the 'Stay Order") (Dkt. No. 11). Pursuant to the Stay Order, the *Mendoza* Action is stayed until the earlier of: (i) the filing of an answer to the amended complaint by defendants in the related Securities Class Action, or (ii) the decision on any appeal of dismissal of *Mendoza et al. v. HF Foods Group Inc. et al.*, 2:20-cv-02929-ODW (the "Securities Class Action") with prejudice or the deadline to file the appeal if one is not filed. (Stay Order at ¶1). The Stay is currently in effect.

On August 21, 2020, Bishop filed a derivative action in the District of Delaware. On October 20, 2020, the parties in that action filed a nearly identical Stipulation and [Proposed] Order to Stay Litigation. *See* Dkt. No. 25-6; *Bishop* Action, Dkt. No. 11. But, rather than evaluating the proposed stay, Judge Richard G. Andrews entered an oral order indicating that he was inclined to transfer the *Bishop* Action to this Court— noting that the Securities Class Action was pending in the Central District of California, HF Foods's executive offices are in California, and that Bishop could have brought his action in the Central District of California. (Dkt. No. 25-1 at 7; *Bishop* Action, Dkt. No. 12). Judge Andrews ordered that any party objecting to a transfer must file a motion in support of its objection; however, no party objected, and the *Bishop* Action was transferred to this Court on November 19, 2020.

On January 5, 2021, Bishop incorrectly filed a Motion to Consolidate and for Appointment as Lead Plaintiff and Approval of Selection of Counsel. (Dkt. No. 20).[2] On January 15, 2021, Mendoza filed his opposition, pointing out that Bishop's motion should be denied because, *inter alia*: (1) the *Mendoza* Action is stayed; (2) Bishop lacks standing, as he is not a party in the *Mendoza* Action and should have first moved to intervene before filing his motion; (3) the motion is premature; and (4) Bishop's counsel

---

[2] Bishop had filed the same motion on January 4, 2021 in the *Bishop* Action (*Bishop* Action, Dkt. No. 45).

is not more qualified than Mendoza's counsel, and the fact that Mendoza filed the first derivative complaint weighs against appointing Bishop as lead plaintiff and Bishop's counsel as lead counsel. (Dkt. No. 24).

The Actions allege similar claims—including violations of Section 14(a) of the Exchange Act, breach of fiduciary duties, unjust enrichment, and waste of corporate assets—against the same defendants Zhou Min Ni, Xiao Mou Zhang, Caixuan Xu, Jian Ming Ni, Zhehui Ni, Hong Wang, Chan Sin Wong, and Ren Hua Zheng (the "Individual Defendants"). Indeed, the Bishop Complaint appears to have been largely copied from the *Mendoza* Complaint, as it contains the same structure and nearly identical language throughout. *See* Ex. 1 to the Declaration of Laurence M. Rosen ("Rosen Decl."), submitted herewith. The *Mendoza* Action further alleges violations of Sections 10(b) and 20(a) of the Exchange Act, abuse of control, and gross mismanagement. The Actions allege that the Individual Defendants breached their fiduciary duties by engaging in or causing the Company to engage in numerous related party transactions (both disclosed and undisclosed) that resulted in the concealed enrichment of Company insiders and affiliates. *Mendoza* Action (Dkt. No. 1) ¶ 9; *Bishop* Action (Dkt. No. 7), ¶ 9. The Actions also allege that the Individual Defendants breached their fiduciary duties by personally making and/or causing the Company to make to the investing public a series of materially false and misleading statements to the investing public that failed to disclose, *inter alia*, that: (1) HF Foods engaged in the related party misconduct; and (2) the Company was "gaming" FTSE/Russel indices by concealing the actual number of free floating shares. *Mendoza* Action (Dkt. No. 1) ¶ 10; *Bishop* Action (Dkt. No. 7), ¶ 10. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times. *Id.* The Actions also allege that the Individual Defendants breached their fiduciary duties by failing to correct and/or causing the Company to fail to correct the false and misleading statements and omissions of material facts referenced above, thereby rendering them personally liable to the Company for

3

breaching their fiduciary duties. *Mendoza* Action (Dkt. No. 1) ¶ 11; *Bishop* Action (Dkt. No. 7), ¶ 11.

The Actions further allege that the Individual Defendants breached their fiduciary duties by continuously failing to maintain adequate internal controls, including by utilizing an independent auditor with questionable standing, and by causing the Company to repurchase its own stock at prices that were artificially inflated due to the foregoing misrepresentations. *Mendoza* Action (Dkt. No. 1) ¶¶ 12-13; *Bishop* Action (Dkt. No. 7), ¶¶ 12-13. Additionally, at least one of the Individual Defendants breached their fiduciary duties by engaging in improper insider sales, obtaining proceeds of over $67,894. *Mendoza* Action (Dkt. No. 1) ¶ 10; *Bishop* Action (Dkt. No. 7), ¶ 10.

## II.     ARGUMENT

### A.     Once the Stay is Lifted, The Actions Should be Consolidated

Because the Actions involve "common issues of law or fact," consolidation is appropriate pursuant to Fed. R. Civ. P. 42(a) once the stay is lifted. The Court's power to consolidate related actions falls within its inherent power to "[c]ontrol the disposition of cases on its docket with economy of time and effort for itself, for counsel and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The purpose of consolidation is to "avoid[] duplication and harassment of parties and witnesses, and minimiz[e] expenditure of time and money by all persons concerned." *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976). A court has broad discretion in deciding whether to consolidate cases. *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987) (noting that "consolidation is within the broad discretion of the district court").

Here, once the stay is lifted, consolidating the Actions will serve the interests of judicial economy and overall efficiency by reducing repetition, duplication, and inconsistent rulings. Currently, both Actions, and the related Securities Class Action, are pending before Your Honor. The Actions present substantially similar issues and

relate to whether HF Food's directors and senior officers breach their fiduciary obligations to the Company and its stockholders. As a result, each individual case will involve essentially the same motion practice, discovery, and trial considerations. The rights of the parties to a speedy discovery process, consistent adjudications, and cooperative discovery efforts will enhance all parties' rights to a fair and equitable proceeding. Accordingly, once the stay is lifted, the Actions should be consolidated.

### B. A Leadership Structure is Necessary for Effective Prosecution of the Actions Once the Stay is Lifted

Particularly if the Actions are consolidated, the appointment of Lead Plaintiff and Co-Lead Counsel will promote the efficient and orderly prosecution of the derivative claims asserted in the Actions. In complex representative actions, where either numerous actions have been filed or will likely be filed, the appointment of lead counsel is appropriate. This structure avoids unnecessary and duplicative discovery, while facilitating the coordination of other pretrial matters. *See, e.g.*, *Berg v. Guthart*, No. 5:14-CV-00515-EJD, 2014 WL 3749780, at *2 (N.D. Cal. July 30, 2014) ("For the purpose of creating an efficient case management structure in complex litigation, a district court has the inherent authority to determine the conduct of derivative proceedings, including appointing lead counsel and/or lead plaintiff.").

Courts "may appoint one or more attorneys as liaison counsel, lead counsel, or trial counsel for the consolidated cases." *Levine v. Andreessen*, No. C 10-03608 JW, 2010 WL 11639935, at *2 (N.D. Cal. Nov. 1, 2010) (citation omitted). Indeed, many courts recognize that "[t]he benefits achieved by consolidation and the appointment of general counsel, i.e. elimination of duplication and repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 774 (9th Cir. 1977) (quoting *MacAlister v. Guterma*, 263 F.2d 65, 69 (2d Cir. 1958)). Moreover, the Manual for Complex Litigation recognizes the benefits of appointing Lead Counsel in complex,

5
JESUS MENDOZA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSILDATION AND APPOINTMENT OF LEAD PLAINTIFF AND CO-LEAD COUNSEL IN THE EVENT THE COURT LIFTS THE STAY; Case No. 2:20-cv-05300-ODW (JPRx)

multiparty litigation:

> Complex litigation often involves numerous parties with common or similar interests but separate counsel. Traditional procedures in which all papers and documents are served on all attorneys, and each attorney files motions, presents arguments, and examines witnesses, may waste time and money, confuse and misdirect the litigation, and burden the court unnecessarily. Instituting special procedures for coordination of counsel early in the litigation will help to avoid these problems.

Manual for Complex for Complex Litigation (Fourth) §10.22 (4d ed. 2004).

Courts within the Ninth Circuit, and across the country, commonly appoint lead plaintiff and lead counsel in derivative cases. *See, e.g.*, *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at *7 (N.D. Cal. Mar. 4, 2013) (appointing lead plaintiff and lead counsel for derivative action); *Hacker v. Peterschmidt*, No. C06-03468, 2006 WL 2925683, at *5 (N.D. Cal. Oct. 12, 2006) (appointing lead plaintiffs and their counsel as co-lead counsel in derivative action); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 273 (S.D.N.Y. 2009) (appointing lead plaintiff and lead counsel for derivative action); *KBC Asset Mgmt. NV on behalf of Chemed Corp. v. McNamara*, 78 F. Supp. 3d 599, 609 (D. Del. 2015) (same); *Dollens v. Zionts*, No. 01 C 2826, 2001 WL 1543524, at *6 (N.D. Ill. Dec. 4, 2001) (same).

### 1. Mendoza Should be Appointed Lead Plaintiff Once the Stay is Lifted

Fed. R. Civ. P. 23.1 requires that a plaintiff in a derivative action "fairly and adequately represent the interests of shareholders . . . who are similarly situated in enforcing the right of the corporation." A plaintiff who leads a shareholder derivative suit occupies a position "of a fiduciary character," in which "[t]he interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949).

Plaintiff Mendoza is capable of diligently and responsibly fulfilling the required duties and expectations of a lead plaintiff. Mendoza has demonstrated his willingness

to prosecute this action to protect the interests of the Company. Not only was he the first to file a derivative lawsuit on behalf of HF Foods, but his complaint was clearly well-informed, thoroughly investigated, and thoughtfully drafted since Bishop largely copied Mendoza's complaint. *See* Ex. 1 to Rosen Decl. Further, Mendoza's Stay Stipulation was thoroughly and thoughtfully negotiated with defendants, as it too was largely copied by Bishop. Thus, Mendoza has been, and is, able, willing, and eager to oversee and litigate this action going forward.

### 2. Rosen Law and Brown Law Should Be Appointed Co-Lead Counsel Once the Stay is Lifted

Mendoza has selected Rosen Law and Brown Law to serve as Co-Lead Counsel. Although no statutory authority exists setting the criteria to select lead counsel for derivative actions, courts throughout the country commonly consider the factors outlined in Fed. R. Civ. P. 23(g), including: the work completed to investigate claims; counsel's experience in handling complex litigation and claims similar to those asserted in the action; counsel's knowledge of the law; and the resources counsel can commit to the action. *Wiehl v. Eon Labs*, No. CIV.A. 1116-N, 2005 WL 696764, at *2 (Del. Ch. Mar. 22, 2005); *Horn v. Raines*, 227 F.R.D. 1, 3 (D.D.C. 2005); *Dollens*, 2001 WL 1543524, at *4; *In re Comverse Tech., Inc. Derivative Litig.*, No. 06-CV-1849 NGG RER, 2006 WL 3761986, at *2 (E.D.N.Y. Sept. 22, 2006), *objections overruled,* No. 06-CV-1849 NGG RER, 2006 WL 3511375 (E.D.N.Y. Dec. 5, 2006). This analysis boils down to "which counsel will serve the best interest of the plaintiffs," which includes consideration of "experience and prior success record" of counsel. *KBC Asset*, 78 F. Supp. 3d at 607. The applicable factors weigh strongly in favor of appointing Rosen Law and Brown Law as Co-Lead Counsel.

### a. Rosen Law and Brown Law Have Extensive Experience, Which Supports Their Approval as Co-Lead Counsel

Rosen Law and Brown Law are highly experienced in the field of shareholder litigation and have successfully litigated numerous shareholder derivative actions and

7

JESUS MENDOZA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSILDATION AND APPOINTMENT OF LEAD PLAINTIFF AND CO-LEAD COUNSEL IN THE EVENT THE COURT LIFTS THE STAY; Case No. 2:20-cv-05300-ODW (JPRx)

securities class actions. The firm resumes of Rosen Law and Brown Law (filed as Dkt. Nos. 25-7 and 25-8) reflect the firms' respective credentials and significant experience in this regard.

Not only do the firms have substantial experience individually, Rosen Law and Brown Law have collaborated on numerous cases and have been appointed co-lead counsel or have agreed on other leadership structures as they litigated actions together in courts around the country. The firms' recent noteworthy achievements in shareholder derivative actions include securing approval of a settlement on behalf of SeaWorld Entertainment, Inc. comprised of a $12.5 million cash payment to SeaWorld as well as substantial corporate governance reforms. *Kistenmacher v. Atchison*, No. 10437-VCS, 2020 WL 2620676, at *1 (Del.Ch. May 22, 2020). Additionally, Rosen Law and Brown Law were co-lead counsel for plaintiffs in Virginia state court and assisted in securing a $10 million cash payment to comScore, Inc. as well as caused comScore to institute a vast array of reforms to its corporate governance. *In re comScore, Inc. Virginia Shareholder Derivative Litigation*, No. CL-2016-0009465 (Va. Cir. Ct., Fairfax Cnty.); *In re ComScore, Inc. Shareholder Derivative Litigation*, Case No. 1:16-cv-09855-JGK (S.D.N.Y.).[3]

---

[3] Other recent cases in which Rosen Law and Brown Law served as co-lead counsel in derivative litigation and achieved favorable settlements for the respective subject companies include: *Johnson v. Carlucci*, 2:19-cv-15812 (D.N.J. Dec. 21, 2020) (settlement on behalf of American Renal Associates, Inc. comprised of reforms to the company's governance and business ethics practices as well as recouping over $1.6 million of director compensation); *In re Henry Schein, Inc. Derivative Litigation*, 1:19-cv-06485 (E.D.N.Y. Dec. 3, 2020) (settlement on behalf of Henry Schein, Inc. comprised of substantial corporate governance reforms to the company's antitrust and merger and acquisition policies); *Heckermann v. Montross, et al.,* Case No. 17-cv-1673 (D.Del. April 1, 2020) (settlement on behalf of CPI Card Group, Inc. compromised of corporate governance reforms); *In re PTC Therapeutics, Inc. Derivative Litigation*, Case No. 2:17-cv-07216-KM-MAH (D.N.J. July 27, 2018) (settlement that resulted in PTC Therapeutics, Inc's adoption of substantial corporate governance reforms) and *Guinan, et al. v. Sperling, et al.*, No. CV2016-005901 (Ariz. Super. Ct. April 25, 2017)

Further, in addition to leading derivative litigation, Rosen Law has been appointed lead or co-lead counsel in numerous securities class actions throughout the country. Indeed, since 2013, Rosen Law has been ranked yearly by ISS Securities Class Action Services as one of the top three firms in the nation as to the number of securities class action settlements obtained for investors. Some of Rosen Law's recent notable successes include securing a $250 million settlement for Alibaba Group Holding Ltd. investors, *Christine Asia Co Ltd. v. Alibaba Group Holding Ltd.*, No. 15-md-2631 (S.D.N.Y. Oct. 16, 2019), securing a $110 million settlement for the shareholders of Fiat Chrysler Automobiles, N.V., *Pirnik v. Fiat Chrysler Automobiles, N.V.*, 15-cv-7199 (S.D.N.Y. Sept. 5, 2019), and securing a $41.5 million settlement for shareholders of Silver Wheaton Corp., *In re Silver Wheaton Corp. Securities Litigation,* 2:15-cv-05146 (C.D. Cal. Aug 6, 2020). Rosen Law's securities class action experience benefits their litigation of derivative cases because securities class actions involve many of the same or related legal and factual issues. Derivative actions, as they do here, commonly contain allegations related to already pending securities class actions.

Likewise, Brown Law has a strong track record of achieving excellent results in litigation throughout the country on behalf of corporations and their shareholders. Brown Law is successfully litigating shareholder derivative actions in numerous courts throughout the country. *See In re India Globalization Capital, Inc., Derivative Litig.*, No. DKC 18-3698, 2020 WL 2097641, at *4 (D. Md. May 1, 2020) ("In addition to the impressive resumes of named counsel in this case [Brown Law and another firm were appointed co-lead counsel], both firms have extensive experience in shareholder derivative litigation."

The experience and prior success of Rosen Law and Brown Law unquestionably

---

(settlement that reduced indemnification rights of officers and directors of Apollo Education Group. Inc. and created right of Apollo's successor to make claims against the officers and directors).

9

demonstrate the firms' competence to lead this litigation. These firms possess the financial resources, personnel, and substantive expertise necessary to litigate the case vigorously, and have served, and will continue to serve, the best interests of all derivative plaintiffs. The favorable results obtained for shareholders in complex shareholder litigation and the breadth of success of Rosen Law and Brown Law should weigh heavily in favor of appointing these firms as Co-Lead Counsel. *See* Manual For Complex Litigation (Fourth) § 10.224 (2004) (the court's responsibilities in appointing lead counsel include an assessment of counsel's qualifications, experience, competence, and commitment to prosecuting action on behalf of plaintiffs).

### b. The Pleadings Support Appointing Rosen Law and Brown Law as Co-Lead Counsel Once the Stay is Lifted

With respect to the work that counsel has done in identifying or investing potential claims in the action, Plaintiff Mendoza filed a highly detailed and comprehensive complaint that reflects the care and commitment that Plaintiff and his counsel have devoted, and will continue to devote, to this litigation. Mendoza and his counsel filed the first derivative complaint—which Bishop and his counsel had the opportunity to study for over two months before filing the *Bishop* Action. Indeed, even a quick review of the complaints reveals that the *Bishop* Complaint largely copied the *Mendoza* Complaint, often containing the exact same language as the *Mendoza* Complaint. For example, paragraphs 1 through 16 of the *Bishop* Complaint is nearly copied word for word from the *Mendoza* Complaint, with a few minor exceptions, including identifying the Company as "HFFG" instead of "HF Foods." This level of copying continues throughout the complaints. *See* Ex. 1 to Rosen Decl. Bishop himself admitted that the Actions are "substantially identical." (Dkt. No. 21 at 3). But, although the complaints are largely similar, Plaintiff Mendoza not only included unique claims for abuse of control and gross mismanagement, but he made the unique claim for violations of Sections 10(b) and 20(a) of the Exchange Act, which give rise to subject

matter jurisdiction based on federal question. While Bishop's case was previously transferred to this Court, because Bishop neglected to allege claims for violations of Sections 10(b) and 20(a) of the Exchange Act, he faces the risk that this Court will dismiss his case for being filed in the wrong court again. Indeed, pleading an actionable federal claim is necessary to bypass the provision in the Company's Second Amended and Restated Certificate of Incorporation that selects the Delaware Court of Chancery for cases filed derivatively on behalf of the Company. *See* Ex. 2 to the Rosen Decl.

Even assuming the Court finds that the pleadings in the Actions are of similar quality, the fact that Mendoza was the first to file a derivative complaint in the Actions should be the "objective tie-breaker" weighing in favor of appointing Rosen Law and Brown Law as Co-Lead Counsel. *Easton v. Bailey*, No. CV1201716DMGFMOX, 2013 WL 12323847, at *1 (C.D. Cal. Jan. 4, 2013) ("Where 'consideration of other relevant factors does not tilt heavily in either direction and there is a need for an objective tie-breaker,' courts may also consider which party was first to file a complaint") (citing *Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003)); s*ee also Moradi v. Adelson*, No. 11-CV-00490-GMN-RJJ, 2011 WL 5025155, at *3 (D. Nev. Oct. 20, 2011) (court finding "it would be appropriate" to appoint counsel from the first-filed action); *In re Oclaro, Inc. Derivative Litig.*, No. C-11-3176 EMC, 2011 WL 4345099, at *4 (N.D. Cal. Sept. 14, 2011) (appointing counsel who filed the first derivative action when actions were at similar, early procedural postures).

The quality and scope of the *Mendoza* Action's complaint, as well as Rosen Law's and Brown Law's diligence in thoroughly investigating the matter, developing the theory of the case, and expeditiously filing a comprehensive and detailed complaint demonstrates the firms' dedication to prosecute the derivative claims vigorously. Accordingly, the first-filed factor weighs in favor of appointing Rosen Law and Brown Law as Co-Lead Counsel.

### III. CONCLUSION

For the foregoing reasons, should the Court decide that it is appropriate at this juncture to consolidate the Actions and to appoint lead plaintiff and counsel, Plaintiff respectfully requests that the Court grant his Motion to (i) consolidate the Actions; and (ii) appoint Plaintiff's chosen counsel, Rosen Law and Brown Law, as Co-lead Counsel.

Dated: February 2, 2021

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim (*pro hac vice* pending)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com

**THE BROWN LAW FIRM, P.C.**
Timothy Brown
240 Townsend Square
Oyster Bay, NY 11771
Telephone: (516) 922-5427
Facsimile: (516) 344-6204
Email: tbrown@thebrownlawfirm.net

*Counsel for Plaintiff Jesus Mendoza*

**CERTIFICATE OF SERVICE**

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows: I am the Managing Partner of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. I am over the age of eighteen.

On February 2, 2021, I electronically filed the following JESUS MENDOZA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION AND APPOINTMENT OF LEAD PLAINTIFF AND CO-LEAD COUNSEL IN THE EVENT THE COURT LIFTS THE STAY with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on February 2, 2021.

/s/ Laurence M. Rosen
Laurence M. Rosen